UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CORTEZ DAUNDRE JONES,<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>UNIVERSITY OF WASHINGTON<br>MEDICINE et al.,<br><br>　　　　　　　Defendants. | CASE NO. 2:23-cv-01154-TL<br>CASE NO. 2:23-cv-01164-TL<br>CASE NO. 2:23-cv-01190-TL<br>CASE NO. 2:23-cv-01262-TL<br>CASE NO. 2:23-cv-01263-TL<br>CASE NO. 2:23-cv-01283-TL<br>CASE NO. 2:23-cv-01290-TL<br>CASE NO. 2:23-cv-01294-TL<br>CASE NO. 2:23-cv-01364-TL<br><br>ORDER DISMISSING COMPLAINTS |

## I.   BACKGROUND

Since August 2, 2023, Plaintiff Cortez Daundre Jones has filed sixty (60) civil lawsuits in the U.S. District Court for the Western District of Washington. Of those cases, nine (9) are currently pending before this Court, briefly described as follows:

- In *Jones v. University of Washington Medicine*, Mr. Jones states only "362 Medical malpractice leading to wrongful death" as his grounds for federal jurisdiction. Case No. C23-1154, Dkt. No. 1-1 at 3. His factual support includes an assertion that he and the University of Washington entered into an agreement on August 2, 2023, for the "treatment of patient Patricia Paramore." *Id.* at 5. His

assertion regarding defendant's failure to comply with the alleged agreement states only "362 medical malpractice reason unknown." *Id.* He claims the amount in controversy is "twenty trillion eight hundred millions [sic]" dollars. *Id.* He allegedly seeks relief for "medical bills and take [sic] of child coming soon." *Id.* at 6. Attached to his proposed complaint are two administrative complaint forms that include allegations regarding several governmental agencies and officers that are not named as defendants in his action, which appear to flush out his claims to some extent. *Id.* at 8–9. While it is unclear how these administrative claims forms relate to Mr. Jones's federal complaint against University of Washington Medicine exactly, they include allegations about the "wrongful death of Patricia Paramore" and that she "was murdered by the same employees of UW Medicine" as part of a grander plot and conspiracy involving a "Social Security Administration employee," Senators Patty Murray and Marie Cantwell, someone named Sadie Kennedy, the KKK, and "satanic connections." *Id.*

- In *Jones v. United States Military et al.*, Mr. Jones sues the U.S. military, two named individuals related to what he refers to as "Major Sheriff County," and unnamed employees of the University of Washington Medicine. Case No. C23-1164, Dkt. No. 1-1 at 2–3. As grounds for jurisdiction, he states "440 – murder for hire of US citizen with connections to terrorist after being the [undecipherable] multiple robberies and human trafficking w/ claims Cortez Jones allows them to work for him." *Id.* at 3. His statement of claim asserts only "stolen property by entire terrorist group against Cortez Duandre Jones via Major Sheriff County. Forged signature – stolen identity." *Id.* at 5. He seeks $9.61 quadrillion in damages which he appears to claim is supported by Google AdSense results connected to his name since 2014. *Id.* at 5, 8.

- In *Jones v. Seattle Times*, Mr. Jones states only "320 – slander & attempted murder by Seattle Times" as his basis for federal jurisdiction. Case No. C23-1190, Dkt. No. 1-1 at 3. His statement of claim notes that "RCW states no news article has right to defame and or slander." *Id.* at 5. He states that the amount in controversy is "negotiable – looking for fairness in this case" (*id.*), but he lists in an attached administrative complaint form damages of both "one billion dollars" and $1 trillion (*id.* at 7). He includes allegations on his administrative complaint form that the "Seattle Times slander & defamation turns into multiple jobs not willing to hire [him] after multiple robberies of news outlets in Washington state in connection to Seattle Times w/ Kate Riley." *Id.* He also asserts that he has experienced "multiple life threatening events over the course of being slandered & robbed by news outlets for a chance to assist other connections that connect to [him]." *Id.* Again, his administrative complaint form lists several governmental organizations without clarifying how any of those agencies are related to his claims against the Seattle Times. *See id.*

- In *Jones v. The White House et al.*, Mr. Jones sues the White House, including President Biden and Vice President Harris, as well as an unspecified person named Steve Ripken. Case No. C23-1262, Dkt. No. 1-1 at 2–3. He lists as his basis for jurisdiction "440 – discrimination & robbery based on credit to be able

to compromise terrorism." *Id.* at 3. The factual basis for his claim appears to be that "the White House discriminates against a black man [himself] who compromised multiple terrorists without the president knowing due to a military [undecipherable] leading into secret service rumors & lies about who [he] truly is to America." *Id.* at 1. He further asserts that the basis of his claim is that "the White House is comfortable with allowing terrorist to attack [him] however use money & credit to boost morale." *Id.* at 5. His claim for relief is "due to the nation safety," and he is apparently seeking $100 "million trillion" in damages. *Id.*

- In *Jones v. Central Intelligence Agency et al.*, Mr. Jones sues the CIA, Marine Corps, U.S. Army, and Navy. Case No. C23-1263, Dkt. No. 1-1 at 2–3. His basis for jurisdictions states "440 – discrimination, 470 – robbery for U.S. military artillery & health care." *Id.* at 3. Factually, he alleges that the "CIA uses trillions from [his] credit to compromise terrorists in our country. However the CIA, military & secret service work deals to lie about [his] current state with technology inside [his] body. . . . [and that] Central intelligence is safer with [him]." *Id.* at 1, 5. He asserts that $200 septillion is the amount in controversy, and that his claim for relief is "due to [the] safety of the President of the United States." *Id.* at 5.

- In *Jones v. Alway et al.*, Mr. Jones sues FBI agent Donald Alway and the Los Angeles FBI field office. Case No. C23-1283, Dkt. No. 1-1 at 1–2. His basis for jurisdiction is "410 – murder via the FBI to rob Steve Jobs & [himself] for German terrorism." *Id.* at 3. Factually, he asserts that "Donald Alway & California FBI under investigation for the murder of Steve Jobs to take over Apple Music at the same time [he] claimed via DistroKid."[1] *Id.* at 1. He further claims that "Donald Alway stalks [him] with spys after Google has [him] as the most revenue claimed via Google AdSense." *Id.* at 5. He seeks $2 trillion as "relief to robbery." *Id.*

- In *Jones v. Rolling Loud*, Mr. Jones does not provide any context for his claim against "Rolling Loud." His entire complaint includes only the following allegation: "Rolling Loud robbery of [himself] for Playboi Carti and Lil Uzi Vert." Case No. C23-1290, Dkt. No. 1-1 at 1. His jurisdictional statement lists only "410 – robbery – terrorism – cyber hacking, 440 – discrimination – deprivation." *Id.* at 3. He appears to seek $100 million trillion in damages but offers no additional support for his claim or his relief sought. *Id.* at 5.

- In *Jones v. Federal Bureau of Investigations et al.*, Mr. Jones sues the FBI and two individual defendants (including Donald Alway, again) who are presumably both federal agents. Case No. C23-1294, Dkt. No. 1-1 at 2. His bases for jurisdiction are "470 – robbery of Cortez Jones, 440 – discrimination, 410 – antitrust." *Id.* at 3. Factually, Mr. Jones asserts that the "FBI & Donald Alway use all FBI connection to hide the identity of the true investigation of the hacking of

---

[1] DistroKid appears to be a service that assists musicians to distribute their original music through music streaming services such as Apple Music. *See* https://distrokid.com/ (last visited Sept. 9, 2023).

stock market from [himself]. Stolen [sic] investigations with attempt to murder [him] multiple times." *Id.* at 1. He further claims that "Federal organizations close all deals using [his] credit while hiding the identity behind the actual investigator." *Id.* at 5. He seeks "one billion 600 million trillion dollars" as "relief to a robbery." *Id.*

- In *Jones v. Sharecare et al.*, Mr. Jones sues Sharecare, Behavioral Health, and an individual named Mendy Jones. Case No. C23-1364, Dkt. No. 1-1 at 2. His basis for jurisdiction lists "470 – corrupt organization via rape, child abduction, murder." *Id.* at 3. Factually, he asserts that "Sharecare pays multiple connections to murder [him] after rape allegations / investigation of child abduction & drugging of patients. Sharecare pays everyone to kill [him]." *Id.* at 1. He further asserts that "Sharecare dodges tons of murders & robberies after paying people to let them get away with rape." *Id.* at 5. He appears to seek $100 "million trillion," but he does not provide any factual basis for the relief sought. *Id.*

Mr. Jones seeks to proceed *in forma pauperis* ("IFP") in every case. In his earliest filed cases, Mr. Jones included an application form that indicated sufficient assets and income sources to warrant denial of IFP status. *See, e.g.*, *Jones v. University of Washington Medicine*, C23-1154, Dkt. Nos. 1, 4. In those cases, Mr. Jones filed amended applications. *See, e.g.*, *id.* at Dkt. No. 9. In subsequent cases, Mr. Jones directly filed applications indicating zero assets and no sources of income. *See, e.g.*, *Jones v. Alway et al.*, C23-1283, Dkt. No. 1. Regardless, in all but his most recently filed case, there is a Report & Recommendation from a U.S. Magistrate Judge recommending denial of IFP status and/or dismissal of the proposed complaints pursuant to 28 U.S.C. § 1915(e). *See, e.g.*, *id.* at Dkt. No. 3; *University of Washington Medicine*, C23-1154, Dkt. No. 11. *But see Sharecare et al.*, Case No. 23-1364, Dkt. No 1 (still pending IFP application).[2] On August 30, Mr. Jones also filed an omnibus objection referencing every case he had filed as of that date, in which he attempts to explain the disparity between his initial IFP applications indicating sufficient assets and income sources, and his amended and newly filed applications indicating no assets and lack of income. *See, e.g.*, *University of Washington*

---

[2] 28 U.S.C. § 1915(e) directs the Court to act "at any time" upon a determination that a proposed IFP complaint may be deficient. Thus, the Court may act on its own motion to review the sufficiency of the complaint.

ORDER DISMISSING COMPLAINTS - 4

*Medicine*, C23-1154, Dkt. No. 12. The Court also takes judicial notice of the recently filed Notice of Intent to Enter Bar Order Against Vexatious Litigant and Order to Show Cause entered in one of Mr. Jones's other cases in this district. *Jones v. Kenzo et al.*, Case No. C23-1208, Dkt. No. 9.

## II.     LEGAL STANDARD

When a plaintiff invokes IFP status, the Court is subject to the requirements set forth under 28 U.S.C. § 1915, which directs a court to dismiss an IFP complaint "at any time if the court determines that . . . [it] fails to state a claim on which relief can be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) applies to all in forma pauperis complaints.").

Additionally, the Court has an independent duty to ensure subject matter jurisdiction. *See United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 967 (9th Cir. 2004) ("[A] district court ha[s] a duty to establish subject matter jurisdiction . . .whether the parties raised the issue or not."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Broadly speaking, a federal district court has jurisdiction over all civil actions (1) "arising under the Constitution, laws, or treaties of the United States" (a.k.a., "federal question" jurisdiction), *see* 28 U.S.C. § 1331, or (2) for more than $75,000 where the citizenship of each plaintiff is different from that of each defendant (a.k.a., "diversity" jurisdiction), *see id.* § 1332; *see also Newtok Vill. v. Patrick*, 21 F.4th 608, 615 (9th Cir. 2021) (noting the two primary "types of federal subject matter jurisdiction—diversity of citizenship and federal question"). Federal courts also have original jurisdiction over cases involving the United States as a defendant in specifically delineated circumstances. *See* 28 U.S.C. § 1346. Federal courts are presumed to lack subject matter jurisdiction over a case, and

the burden of showing otherwise rests on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

This Court liberally construes pleadings filed by *pro se* litigants and holds them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). Even so, a court should "not supply essential elements of the claim that were not initially pled." *E.g.*, *Henderson v. Anderson*, No. C19-789, 2019 WL 3996859, at *1 (W.D. Wash. Aug. 23, 2019) (internal quotation marks omitted) (quoting *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)); *see also Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019) ("[C]ourts should not have to serve as advocates for pro se litigants." (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987))). The Court is mindful that it ordinarily must grant leave to amend when it dismisses a *pro se* complaint unless the pleading cannot be cured by amendment. *E.g.*, *Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017) (affirming lack of leave to amend where amendment was futile).

### III.    DISCUSSION

As discussed below, the Court finds that all of Plaintiff's proposed complaints are uniformly deficient pursuant to 28 U.S.C. 1915(e)(2). None of the complaints present sufficient factual allegations from which a plausible claim for relief in federal court arises.

**A.    Subject Matter Jurisdiction**

As a federal court, this Court must dismiss a case if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h). "Federal courts are courts of limited jurisdiction, having the power to hear certain cases only as the Constitution and federal law authorize." *Newtok Vill.*, 21 F.4th at 615; *accord Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). None of Mr. Jones's complaints provide sufficient information to meet his burden of overcoming the

1  presumption that the Court lack's subject matter jurisdiction. *Kokkonen*, 511 U.S. at 377. For

2  example, Mr. Jones fails to assert any federal statute or Constitutional provision under which his

3  claims against the University of Washington,[3] or the Seattle Times arise, which is the only

4  potential source of jurisdiction, as those entities both are Washington based organizations

5  prohibiting complete diversity. *See University of Washington Medicine,* Case No. C23-1154,

6  Dkt. No. 1-1 at 3; *Seattle Times*, Case No. C23-1190, Dkt. No. 1-1 at 3. Similarly, in addition to

7  lacking a federal question basis for jurisdictions, Mr. Jones's suits against Rolling Loud and

8  Sharecare provide no specific facts from which the Court could possibly determine whether

9  complete diversity exists. *See Rolling Loud*, Case No. C23-1290, Dkt. No. 1-1 at 3; *Sharecare et

10 al.*, Case No. C23-1364, Dkt. No. 1-1 at 3. Although the Court recognizes that Mr. Jones appears

11 to name several federal government organizations, officers, and employees in his complaints, he

12 fails to provide sufficient grounds upon which the Court can assert jurisdiction over the cases

13 involving the United States as a defendant pursuant to 28 U.S.C. § 1346 in any of the cases

14 against the federal government. *See United States Military et al.*, Case No. C23-1164, Dkt. No.

15 1-1 at 3; *The White House et al.*, Case No. C23-1262, Dkt. No. 1-1 at 3; *Central Intelligence

16 Agency et al.*, Case No. C23-1263, Dkt. No. 1-1 at 3; *Alway et al.*, Case No. C23-1283, Dkt. No.

17 1-1 at 3; *Federal Bureau of Investigations*, Case No. C23-1294, Dkt. No. 1-1 at 3.

18         The Court therefore FINDS that Mr. Jones fails to plead sufficient facts to permit the Court

19 to assert subject matter jurisdiction over any of his proposed complaints.

20 **B.     Failure to State a Claim**

21         The standard for dismissing a complaint for failure to state a claim under 28 U.S.C.

22 § 1915(e)(2)(B)(ii) is the same as the standard under Federal Rule of Civil Procedure 12(b)(6).

23

---

24 [3] For example, medical malpractice is a state, not federal, law claim.

*See, e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). A plaintiff fails to state a claim unless the well-pleaded factual allegations in the complaint, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). More than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are required. *Id.* at 672. A claim only has "facial plausibility" if the plaintiff "pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added).

None of Mr. Jones's proposed complaints meet the plausibility standard. In each complaint, Mr. Jones makes conclusory statements regarding the alleged harms he believes the named defendants have caused, but he provides no factual content to support the conclusory allegations. *See supra* Section I. For example, in the statement of claim section in his complaint against the FBI, Mr. Jones asserts that "Federal organizations close all deals using Cortez Daundre Jones credit while hiding the identity behind the actual investigator." *Federal Bureau of Investigations et al.*, Case No. C23-1294, Dkt. No. 1-1 at 5. In another example, from his complaint against the Seattle Times, Mr. Jones alleges that "Seattle Times slander & defamation turns into multiple jobs not willing to hire Cortez Duandre Jones after multiple robberies of news outlets in Washington state in connection to Seattle Times w/ Kate Riley." *Seattle Times*, Case No. C23-1190, Dkt. No. 1-1 at 7. The amount of factual content provided in this example is the exception, not the rule, across Mr. Jones's multiple complaints. In contrast, Mr. Jones's complaint against Rolling Loud includes only the following assertion: "The Rolling Loud robbery of Cortez Duandre Jones for Playboi Carti & Lil Uzi Vert." *Rolling Loud*, Case No. C23-1290, Dkt. No. 1-1 at 1. None of Mr. Jones's proposed complaints include even "threadbare

recital[s] of elements" of claims for relief, let alone sufficient factual content from which the Court could imply any liability for any of the named defendants. *See Iqbal*, 556 U.S. at 672.

The Court therefore FINDS that all of Mr. Jones's proposed complaints fail to state a claim for relief per 28 U.S.C. § 1915(e)(2)(B)(ii).

Courts will typically allow a *pro se* plaintiff an opportunity to amend a deficient complaint unless doing so would be futile. *Yagman*, 852 F.3d at 867 (internal quotation marks omitted) (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016)). The Court therefore DENIES Mr. Jones's requests for IFP status and DISMISSES WITHOUT PREJUDICE all nine proposed complaints as legally and factually deficient. The Court GRANTS Mr. Jones leave to amend his proposed complaints by no later than **Monday, September 25, 2023**. If Plaintiff fails to file an amended complaint by the deadline in any of his pending cases or if any of the amended complaints fail to state a plausible claim for relief and sufficient grounds for jurisdiction in federal court, the Court will dismiss the case in its entirety.

Dated this 11th day of September 2023.

Tana Lin
United States District Judge